UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                                CASE NO.

**EVANS INDUSTRIES, INC.**                                                          **06-10370**

                                                                                                        SECTION A
DEBTOR
                                                                                                        CHAPTER 11

## REASONS FOR DECISION

Evans Industries, Inc. ("Debtor" or "Evans") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on April 25, 2006. A plan was confirmed on October 24, 2006, authorizing the sale of substantially all of Debtor's assets ("Plan"). The remaining assets and the proceeds of sale were placed in a Distribution Trust ("Trust") for the benefit of claimants. Distributions from the Trust were governed by the terms of the Plan. The Distribution Trustee ("Trustee") was authorized to object to claims.

On February 17, 2009, Trustee filed an Objection to Proof of Claim 190-1 filed by Asset Funding Group, LLC ("AFG"), and on May 11, 2009, Trustee filed his First Amended Objection to Proof of Claim 190-1.[1] A trial on the merits was held on June 16, 2009. At the conclusion of the trial the Court requested additional briefing from the parties. Post-trial briefs were submitted on July 31, 2009, after which the Court took the matter under advisement.

**I. Facts**

Prior to filing for bankruptcy relief, Evans operated several facilities including one leased from AFG. On August 29, 2005, Hurricane Katrina damaged Evans' property, including that leased from AFG. As a result of the damage, Evans filed multiple claims against its insurer, Lexington Insurance Company ("Lexington"), including claims for business interruption and damage to

---

[1] Pleading 978.

property. AFG, as an additional insured under the Lexington policy, filed its own claims for damage to the leasehold. Following the filing of bankruptcy, Debtor also incurred postpetition rents for continued occupancy.

Lexington initially advanced $700,000.00 to Evans as a payment on its claims. However, when neither AFG or Evans could come to terms with Lexington on the remaining amounts due, both, separately, filed suit in federal district court. The parties stipulated that the claims asserted by AFG and Evans against Lexington were for separate damages. Thus, neither Evans nor AFG asserted a claim against Lexington for damages that was also asserted by the other. AFG was not a party to the suit by Evans against Lexington and Evans was not a party to the suit by AFG against Lexington.

Both Evans and AFG independently settled their claims against Lexington. Evans' settlement was in excess of $700,000.00, but Lexington reduced the amount paid to Evans for the $700,000.00 already advanced.

AFG's original proof of claim no. 140, filed on July 5, 2006, listed four distinct claims. AFG claimed reimbursement for property taxes paid by AFG but owed by Evans under the terms of their lease. In addition, AFG claimed prepetition rents, capital expenditures, and damages to cure. A bar date of February 5, 2007, ("Bar Date") was set by the Plan.[2] No additional claims were filed by AFG prior to the Bar Date.

On February 5, 2007, AFG filed an amended proof of claim asserting administrative priority for $700,000.00 and citing §8.2 of the Plan. On May 3, 2007, Trustee filed an Objection to Proofs

---

[2] Article XIII, B, 1 of the Plan states that administrative claims must be filed within thirty days of the effective date of the Plan. Pleading 502, Exhibit A, p. 50.

of Claim 140 and 190 of AFG.[3] After a hearing on June 21, 2007, Claims 140 and 190 were consolidated with adversary 07-1010.[4] Adversary 07-1010 was dismissed without prejudice on October 28, 2008, after the parties filed suit in federal district court.[5]

The terms of Evans' Plan addressed AFG's claims. The lease between AFG and Evans was rejected under the terms of the Plan. AFG was paid $300,000.00 in full satisfaction of all prepetition claims and lease rejection damages including all claims asserted under its proof of claim. AFG retained the right to request an administrative claim under the Plan's terms.

On May 11, 2009, Trustee filed its First Amended Objection to Claim 190,[6] to which AFG filed a Response.[7]

On June 16, 2009, this Court conducted a hearing on the Objection at which the Court requested that the parties file supplemental briefs. Upon the filing of the supplemental briefs on July 31, 2009,[8] the Court took the matter under advisement.

**II. Law and Analysis:**

As set forth above, AFG's original proof of claim alleged nonpayment of prepetition rents, reimbursement for property taxes paid by AFG, and capital expenditures. Section 8.2 of the Plan provides:

---

[3] Pleading 641.

[4] Pleading 765, p. 4.

[5] Adversary 07-1010, pleadings 16 and 21.

[6] Pleading 978.

[7] Pleading 982.

[8] Pleadings 1005, 1006.

3

> [T]he Debtor shall reject the lease(s)...with Asset Funding Group, LLC ("AFG"), with the effective date of that rejection being the Closing Date. Further, the Master Lease shall be deemed terminated as of the Closing Date. AFG shall be paid $300,000 on or before the Closing Date from the Sale Proceeds in full satisfaction of its pre-petition claims and lease rejection claims ...with any further Claim whatsoever held by AFG ...being waived and discharged in its entirety after the $300,000 payment is made; with the sole exception that AFG reserves the rights (which are not discharged by this Section 8.2) to: (I) assert an Administrative Claim, or such other claim as the Bankruptcy Court may allow (through motion to the Bankruptcy Court) based on conversion or misappropriation of property damage insurance proceeds; (ii) establish, sue for, compromise, receive and/or recover any insurance proceeds in which AFG has an interest (whether previously received by the Debtor's estate or otherwise).....

As a result, section 8.2 of the Plan settled AFG's prepetition claims for a cash payment of $300,000.00 with limited reservation.

AFG's amended claim provides little evidence for its basis. The claim asserts an administrative priority for $700,000 but fails to indicate on what grounds the claim is based. After Objection by the Trustee, AFG belatedly explained that the $700,000 was for damage to the leasehold property not otherwise reimbursed by insurance and for environmental damages. At trial on the Objection, AFG offered no evidence of environmental damage and also failed to produce any evidence of damage to the leasehold.

### A. Claims for damage to the leasehold as a result of Hurricane Katrina

AFG argues that it settled its claims against Lexington for less than the amount actually incurred in damage. However, AFG failed to produce the settlement with Lexington (citing confidentiality), failed to produce evidence of damage, and failed to provide an accounting of reimbursements or repairs made. Given these facts, the Court has no basis to award any relief to AFG for unreimbursed damages to the leasehold interest.

AFG's claims are also released under the terms of the Plan. Section 8.2 released and

discharged any prepetition claims asserted by AFG under the lease. Hurricane Katrina came ashore on August 29, 2005 causing severe damage throughout south Louisiana. Debtor did not file its case until April 25, 2006. As a result, any claims for damage to the leasehold interest of AFG arising from Hurricane Katrina were prepetition claims released under the Plan. Thus, AFG's claim for unreimbursed damages to the property can not succeed due to its failure of proof and because the Plan's terms released any such claim.

### B. AFG's Claim to Insurance Proceeds

AFG also claims an interest in the $700,000 received by Debtor from Lexington. Section 8.2 of the Plan allows AFG to enforce its right to receive any insurance proceeds payable to Evans provided AFG proves an interest in the proceeds. At confirmation, both Evans and AFG were involved in litigation with Lexington on their separate claims. At the time, Evans had received $700,000 in advances from Lexington. However, since neither Evans' nor AFG's claims had been liquidated, it was unclear if any of these monies might be subject to return or augmentation.

AFG stipulated that it had settled all claims against Lexington for damages sustained to its property as a result of Hurricane Katrina. It now argues that the amounts paid by Lexington were insufficient to satisfy its actual damages. As a result, it claims an interest in the $700,000 paid by Lexington to Evans.

AFG admits that the amounts requested by Evans on the Lexington policy did not include claims for damage to AFG's property. When Evans and Lexington settled their claims, Lexington took a $700,000 credit against the settlement amount, effectively acknowledging that the amounts previously forwarded were an advance on Evans' claims. This fact alone is sufficient proof that the monies received by Evans from Lexington were not paid for any damage sustained to AFG's

5

property. Since both parties agree that Evans did not assert any claims against Lexington for damages sustained to AFG's property, AFG could not have an interest in the payments received by Evans from Lexington. As a result, AFG holds no claim or interest in the insurance proceeds forwarded to Evans by Lexington.

### C. Claims for Environmental Damage

Finally, AFG asserts an administrative claim for environmental damages sustained to its property and alleges that section 8.2 of the Plan allows for its consideration. Under AFG's interpretation, section 8.2 allows AFG to assert "any administrative claims to which AFG may be entitled to under law" against any insurance proceeds received by Evans. This interpretation does not require that the administrative claim be related to the insurance or paid in satisfaction of the administrative claim. The parties acknowledged at trial that Lexington's policy did not insure against environmental damages. Nevertheless, under AFG's interpretation, this fact is irrelevant.

AFG's summary of section 8.2 is inaccurate. The provision actually reads:

> with any further Claim whatsoever held by AFG ...being waived and discharged in its entirety after the $300,000 payment is made; with the sole exception that AFG reserves the rights (which are not discharged by this Section 8.2) **to: (i) assert an Administrative Claim**, or such other claim as the Bankruptcy Court may allow (through motion to the Bankruptcy Court) **based on conversion or misappropriation of property damage insurance proceeds; (ii) establish, sue for, compromise, receive and/or recover any insurance proceeds in which AFG has an interest** (whether previously received by the Debtor's estate or otherwise).....

The plain reading of section 8.2 provides that the reserved administrative claims must be based on *the conversion or misappropriation of property damage insurance proceeds; or to recover insurance proceeds in which AFG has an interest*. As previously held, the $700,000 received from Lexington by Evans did not satisfy any claims by AFG against Lexington but only the independent claims of Evans. Therefore, AFG had no interest in the proceeds and any claims for conversion or

6

misappropriation of property damages insurance proceeds are unsustainable. This view is also supported by other provisions of the Plan. Section 8.3 provides conditions for the Plan to become effective. Subsection b states:

> (b) AFG shall complete, by no later than the date that the Confirmation Order becomes a Final Order, its environmental due diligence with respect to the properties subject to the Master Lease and [be] satisfied that the environmental condition of the properties is such that the compromise set forth in Section [sic] is in the best interests of AFG;

AFG failed to object to the environmental condition of the leasehold property before the Confirmation Order became final. As a result, the terms of the compromise as contained in section 8.2 are enforceable and the claims are discharged as to any prepetition environmental damages.

AFG also argues that certain of its damages arose postpetition and were not released by the provisions of section 8.2. The terms of section 8.2 release AFG's prepetition and lease rejection damages. Lease rejection damages are claims arising from the termination or rejection of the lease. These would include environmental damages to the property that the tenant obligated itself to remedy on termination. Assuming an environmental claim arose under the lease, whether it accrued prepetition or postpetition, it would have been discharged under the provisions of section 8.2. This leaves only the potential for a claim arising postpetition and not based on Evans' obligations under the lease.

Not only did AFG fail to establish at trial when its alleged environmental damages accrued, it failed to introduce any evidence of environmental damage to its property at all. Other than a reference to sustained damages in argument, not one witness or scrap of paper to establish the type, extent, or cause of damage was offered. AFG merely asserted that damage existed, and as a result,

7

it was entitled to $700,000.

The administrative claimant bears the burden of establishing its right to an administrative claim.[9] AFG has fallen far short of meeting its burden of proof. Based on the record, this Court has no evidence regarding the timing of any alleged acts by Evans that caused environmental damage; the existence, nature, or extent of any environmental damage; or the amount of the damage sustained. Therefore, AFG's administrative claim for environmental damage is disallowed.

### III. Conclusion

Based on the foregoing, there is no basis for allowance of AFG's amended proof of claim. As a result, the Court will enter an order in accordance with these Reasons disallowing the claim.

New Orleans, Louisiana, September 16, 2009.

                                                           Hon. Elizabeth W. Magner
                                                           U.S. Bankruptcy Judge

---

[9] *In re SGS Sudio, Inc.*, 256 B.R. 580, 582 (Bankr.N.D.Tex. 2000); *citing In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992).